UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
PADUCAH DIVISION

| | | |
|---|---|---|
| C.A. JONES MANAGEMENT GROUP, LLC, | ) | |
| GLOBAL BOOK RESELLERS, LLC, | ) | |
| TECHNOLOGY ASSOCIATES, INC., | ) | |
| CHARLES A. JONES and SARAH C. JONES | ) | |
| | ) | |
| Plaintiffs | ) | |
| | ) | |
| v. | ) | Case No.: 5:13-CV-173-R |
| | ) | |
| SCOTTSDALE INDEMNITY COMPANY | ) | |
| | ) | |
| Defendant | ) | |

## DEFENDANT SCOTTSDALE INDEMNITY COMPANY'S RESPONSE IN OPPOSITION TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION (DN 13)

Defendant, Scottsdale Indemnity Company ("Scottsdale"), by counsel, hereby tenders its Response in Opposition to Plaintiffs' Motion for Preliminary Injunction (DN 13). Plaintiffs have failed to demonstrate their substantial likelihood of success on the merits and irreparable harm essential to warrant injunctive relief because they are not entitled to coverage or defense under the insurance policies at issue and their alleged potential harm is pecuniary in nature. Accordingly, Plaintiffs' Motion for Preliminary Injunction should be denied. *See, e.g.*, *Frisch's Rest. v. Shoney's, Inc.*, 759 F.2d 1261 (6th Cir. 1985).

## I.      INTRODUCTION

Plaintiffs filed suit against Scottsdale and now seek preliminary injunctive relief for coverage and defense costs related to two lawsuits filed against them pursuant to their Scottsdale claims-made directors and officers ("D&O") insurance Policy. Analysis of the Policy at issue as well as the relevant facts supported by admissible evidence establish unequivocally that Plaintiffs

are not entitled to coverage for either of these lawsuits. The first lawsuit for which Plaintiffs seek coverage and defense was not timely reported to Scottsdale under the applicable Policy Period. The second lawsuit for which Plaintiffs seek coverage and defense was filed after termination of the Policy for nonpayment of premium. These uncontroverted facts are established by evidence submitted herewith.

Additionally, a host of specific Policy limitations and exclusions preclude coverage and defense, including a "Non-Duty to Defend – Directors and Officers" provision in the Policy Coverage Form specifically imposing the obligation of defense upon the insureds rather than Scottsdale. (Exh. 1, Endorsement No. 35.)

Because Plaintiffs are not entitled to coverage or defense, their Complaint fails as a matter of law. Plaintiffs have not demonstrated a substantial likelihood of success on the merits and the potential harm alleged by Plaintiffs is monetary in nature only, insufficient to warrant the extraordinary remedy of injunctive relief. The balance of equities here tips in favor of Scottsdale, and this breach of contract dispute between private parties in no way implicates greater societal public interest. Accordingly, Plaintiffs' Motion for Preliminary Injunction should be denied.

## II.     STATEMENT OF FACTS

Plaintiffs, C.A. Jones Management Group, LLC ("C.A. Jones"), Global Book Resellers, LLC ("GBR"), Technology Associates, Inc. ("TAI"), Charles Jones, and Sarah Jones, filed the subject Complaint against Scottsdale on September 30, 2013, alleging Scottsdale owes them an obligation of insurance coverage and defense relating to two lawsuits filed against them, specifically the cases of: (1) *David Griffin v. Charles A. Jones, Sarah C. Jones, C.A. Jones Management Group, LLC, Global Book Resellers, LLC, Technology Associates, Inc. and John*

*Doe Entities 1-10*, USDC WDKY, Case No. 5:12-cv-00163-TBR (hereinafter "Griffin II"), and (2) *Robert H. Waldschmidt, Trustee v. C.A. Jones Management Group, LLC, Charles A. Jones, and Scott Wright*, USBC MDTN, Adv. Proc. No. 3:13-ap-90101 (hereinafter "CBR Trustee case"). In its Answer, Scottsdale denies coverage for the two lawsuits identified in the Complaint and it counterclaims for declaratory judgment seeking an order confirming lack of coverage for the claims raised in Plaintiffs' Complaint. (DN 6.)

A.     <u>The Scottsdale Policy</u>

Scottsdale issued a Business and Management Indemnity Policy to C.A. Jones Management Group, LLC ("C.A. Jones"), and a number of its affiliates as additional insureds under Policy No. EKI3042564 (the "Policy"). The Policy includes General Terms and Conditions, Directors and Officers and Company Coverage Section ("D&O"), and additional provisions for employment claims and fiduciary claims governed by ERISA not relevant to this litigation. The Policy term was July 1, 2011 to July 1, 2012, and a true and correct copy of the Policy is attached hereto as Exhibit 1 and incorporated by reference in full herein. (Exh. 1, also referred to as the "7/1/11 Policy.") Scottsdale issued another policy listing C.A. Jones as the named insured on July 1, 2012 (the "7/1/12 Policy"). A true and correct copy of the 7/1/12 Policy is attached hereto as Exhibit 2 and incorporated by reference in full herein. (Exh. 2.) Pursuant to Endorsement No. 47 of the 7/1/12 Policy, the C.A. Jones Policy was canceled effective November 27, 2012 for nonpayment of premium. (Exh. 2 at Endorsement No. 47.)

The 7/1/11 Policy and the 7/1/12 Policy are claims-made-and-reported policies, also known as "claims-made" policies. Pursuant to the insuring clauses of each Policy, a claim must be first made and reported during the applicable Policy Period for any alleged wrongful act taking place prior to the end of the Policy Period to be covered. (Exh. 1, Bus. & Man. Indem.

Pol. Dec. at 1, Bus. & Man. Indem. Pol. D&O Coverage Sec. at A.1.-3.; Exh. 2, Bus. & Man. Indem. Dec. at 1; Bus. & Man. Indem. Pol. D&O Coverage Sec. A.1.-3.)

The Insuring Clauses of the Policy specifically state Scottsdale shall pay the losses:

> for which the Directors and Officers have become legally obligated to pay by reason **of a Claim first made** against the Directors and Officers during the Policy Period or, if elected, the Extended Period, **and reported to the Insurer** pursuant to Section E.1., for any Wrongful Act taking place prior to the end of the Policy Period.

(Exh. 2, D&O Coverage Section, at A.1. (emphasis added).) The Insuring Clauses related to company losses contain the same language requiring the claim to be reported during the Policy Period when first made as a prerequisite for coverage. (Exh. 1, D&O Coverage Section; Exh. 2, D&O Coverage Section at A.2. & A.3.)

Under the Policy, all related wrongful acts are considered to be one insurance claim which must be reported to Scottsdale during the Policy Period when the wrongful acts are first alleged against the insured. Policy Section D.3. provides:

> Claims arising out of the same Wrongful Act or all Interrelated Wrongful Acts shall be deemed to constitute a single Claim and shall be deemed to have been made at the earliest of the following times, regardless of whether such date is before or during the Policy Period: (a) the time at which the earliest Claim involving the same Wrongful Act or Interrelated Wrongful Act is first made; or (b) the time at which the Claim involving the same Wrongful Act or Interrelated Wrongful Acts shall be deemed to have been made pursuant to the notice provision in Section E.2.

Policy Section E., Notification, requires:

> 1. The **Insureds** shall, as a condition precedent to their rights to payment under this Coverage Section only, give the **Insurer** written notice of any **Claim** as soon as practicable, but in no event later than sixty (60) days after the end of the **Policy Period** . . .

> 2. If, during the Policy Period . . . any of the Insureds first become aware of a specific **Wrongful Act** which may reasonably give rise to a future **Claim** covered under this **Policy**, and if the **Insureds** during the **Policy Period** . . . give written notice to Insurer as soon as practicable . . . that any **Claim** made subsequently

arising out of such **Wrongful Act** shall be deemed for the purposes of this Coverage Section to have been made at the time such notice was received by the **Insurer.** No coverage is provided for fees, expenses and other costs incurred prior to the time such **Wrongful Act** results in a claim.

(Exh. 1, D&O Coverage Section at E; Exh. 2, D&O Coverage Section at E.)

Interrelated Wrongful Acts means "all **Wrongful Acts** that have as a common nexus any fact, circumstance, situation, event, transaction, cause or series of facts, circumstances, situations, events, transactions, or causes." (Exh. 1, D&O Coverage Section at B.6.; Exh. 2, D&O Coverage Section at B.6.)

The parties agree that Griffin I and Griffin II share a common nexus of facts, circumstances, and events under the definition of Interrelated Wrongful Acts in the Policy. Since Griffin I and Griffin II involve interrelated wrongful acts, they constitute one claim. The Policy states:

> D. LIMIT OF LIABILITY AND RETENTIONS
> * * *
> 3. All Claims arising out of the same Wrongful Act and all Interrelated Wrongful Acts shall be deemed to constitute a single Claim and shall be deemed to have been made at the earliest of the following times, regardless of whether such date is before or during the Policy Period:
>> a. the time at which the earliest Claim involving the same Wrongful Act or Interrelated Wrongful Act is first made; or
>> b. the time at which the Claim involving the same Wrongful Act or Interrelated Wrongful Acts shall be deemed to have been made pursuant to Section E.2. below.

(Exh. 1, D&O Coverage Section at D.3.; Exh. 2, D&O Coverage Section at D.3.) "Claim" is "a civil proceeding against any Insured seeking monetary damages or non-monetary or injunctive relief, commenced by the service of a complaint or similar pleading." (Exh. 1, D&O Coverage Section at B.1.; Exh. 2, D&O Coverage Section at B.1.) Thus, Griffin I and Griffin II constitute

one claim deemed to have been first made when the Griffin I Complaint was filed, February 28, 2012, which falls within the 2011 Policy Period.

**B.**     **Plaintiffs' Litigation History and Reports of Claims to Scottsdale**

Charles Jones, C.A. Jones, and their affiliated companies have been involved in a litany of litigation over the past two years.  At least ten separate lawsuits have been filed against C.A. Jones, Charles Jones, or their affiliated companies since February 2012, asserting a broad spectrum of claims for fraud, securities fraud, misappropriation, breach of contract, unjust enrichment, breach of loan agreements and guaranties, conversion, breach of fiduciary duty, civil conspiracy, copyright infringement, trademark counterfeiting, and fraudulent conveyance. (Exhibit 3, Suits Filed By and Against Plaintiffs, including case captions and brief descriptions.) Some of these cases have been resolved by settlement or dismissal, while others continue. Despite the litany of formal legal proceedings pending against Plaintiffs, they seek coverage and defense from Scottsdale for only two claims, the lawsuits identified above as Griffin II and the CBR Trustee case.  (Compl., DN 1.)

Scottsdale maintains comprehensive documentation of communications from its insureds reporting or notifying Scottsdale of actual or potential claims.  Except for attorney-client and attorney work product privileged documents, Scottsdale's complete claims files relating to the lawsuits for which Plaintiffs seek coverage in this case, as well as documents concerning communications by Plaintiffs to Scottsdale regarding the other lawsuits pending against Plaintiffs listed in Exhibit 3 (including Griffin I), are contained in the documents numbered Scottsdale 000001 – Scottsdale 001211, attached hereto and incorporated by reference in full herein as Exhibit 4.  (Exh. 4.)  All attorney-client and attorney work product privileged

documents from Scottsdale's complete files relating to the lawsuits listed in Exhibit 3 are identified by document number on the Privilege Log attached hereto as Exhibit 5. (Exh. 5.)

Scottsdale compiled and analyzed its complete claims files (Exhs. 4 & 5) in response to the Plaintiffs' assertion they timely reported the Griffin I claim to Scottsdale as required by their claims-made Policy. (Plaintiffs' Mem. In Supp. of Mot. for Prelim. Inj., DN 13-1, at 6, 9; C. Jones Aff., DN 13-3, ¶ 4, generally stating Plaintiffs reported Griffin I to Scottsdale without providing date of notice or report.) Each communication from Plaintiffs or their agents to Scottsdale notifying, reporting, or advising Scottsdale of a potential claim related to this litigation is described and identified by specific Scottsdale document number on Exhibit A to the Affidavit of Michael Zartman, attached hereto as Exhibit 6 and incorporated by reference in full herein. (Exh. 6, identifying all relevant notices or reports documented by Scottsdale in Exhibit 4.) Contrary to Plaintiffs' assertion, the documentary evidence of Plaintiffs' reports of notice to Scottsdale indicate Plaintiffs did not report their claims to Scottsdale during the Policy Period when they were first made as required by the Policy. (*Id.*)

To appreciate the significance of the timing of Plaintiffs' reports of claims to Scottsdale identified comprehensively in Exh. A to Mr. Zartman's Affidavit, it is important to address the substance and timing of the first interrelated lawsuit filed against Plaintiffs, *David Griffin v. Charles A. Jones, Sarah C. Jones, C.A. Jones Management Group, LLC, Integrated Computer Solutions, Inc., Blackrock Investments, LLC, SE Book Company, LLC, and College Book Rental Company, LLC*, USDC WDKY, Case No. 5:12-cv-00033-TBR (hereinafter "Griffin I"). The allegations of Griffin I and Griffin II are substantially similar and relate to many of the same transactions and occurrences.

According to the pleadings in both Griffin I and Griffin II, since 2008, Griffin invested in various entities owned and operated by Charles Jones, including Integrated Computer Solutions, LLC, Blackrock Investments, LLC, SE Book Company, LLC, and College Book Rental Company, LLC ("CBR"). These companies are involved in the sale and rental of textbooks, among other things. Jones formed C.A. Jones Management to serve as the management consultant for the companies. David Griffin made substantial investments in these companies. Griffin alleges that Jones used C.A. Jones to channel Griffin's investments in the companies to Jones' consulting firm. Griffin also alleges that the Jones' companies paid excessive consulting fees to C.A. Jones, rendering those affiliated entities nearly insolvent. Based upon this alleged misconduct, Griffin filed his first lawsuit against C.A. Jones Management, Charles Jones, Sarah Jones, and affiliated companies on February 28, 2012, for securities fraud, breach of fiduciary duty, fraud, misappropriation, breach of contract, and unjust enrichment (Griffin I, DN 1). Griffin then moved for the appointment of Myles MacDonald as receiver to assume control over the operations of the companies. On August 23, 2012, the parties to Griffin I stipulated to voluntary dismissal of the Griffin I lawsuit without prejudice, and an order of dismissal was filed of record. (Griffin I, DN 58, Stipulation of Dismissal, entered 8/23/12.)

On November 2, 2012, Griffin filed his second suit against Plaintiffs (Griffin II), alleging that MacDonald uncovered significant problems regarding the Jones' companies' inventories. For example, MacDonald discovered SE Book Company and CBR were engaged in the production and distribution of counterfeit textbooks. The scheme involved purchasing low-cost international editions of textbooks, rebinding them, and removing the copyright marks to market them as original U.S. editions. Griffin II alleges these acts constitute copyright and trademark infringement as alleged in other various lawsuits against Plaintiffs, including *The McGraw-Hill*

*Companies, LLC, et al. v. Charles A. Jones, et al.,* USDC SDNY, Case No. 12-CV-07085. (*See* Exh. 3.) Griffin further alleges that, since MacDonald's investigation, the companies' inventories and assets have been fraudulently transferred to other entities controlled by Jones.

The allegations in Griffin I of securities fraud, breach of fiduciary duty, fraud, misappropriation, unjust enrichment, and constructive trust relate to many of the same facts and circumstances alleged in Griffin II. Accordingly, as Plaintiffs concede, the Griffin I and Griffin II lawsuits involve interrelated wrongful acts alleged against them.

      1.    <u>Plaintiffs Reported Griffin I to Scottsdale After Expiration of Policy Period</u>

The Griffin I Complaint was filed against Plaintiffs on February 28, 2012, and dismissed by stipulation of the parties on August 23, 2012. (Griffin I, DN 1 & DN 58.) Since Griffin I was filed on February 28, 2012, it falls within the 7/1/11 through 7/1/12 Policy Period (the "7/1/11 Policy Period"). Griffin I, however, was not reported to Scottsdale during the 7/1/11 Policy Period; it was only first reported to Scottsdale on September 25, 2012, over 60 days following the end of the Policy Period during which the claim was first made. (Exh. 6; Exh. 4.) Scottsdale did not receive notice or report of the Griffin I claim until after the 7/1/11 Policy Period expired on 7/1/12 and until after the case was dismissed on August 23, 2012.[1]

While Griffin I was actually pending, Plaintiffs and their agents at no time submitted any type of tender or request to Scottsdale (1) to assume their defense, (2) to pay, advance, or consent to Plaintiffs' defense costs or indemnification obligations in Griffin I, or (3) to consent to Plaintiffs' resolution of the lawsuit. Quite to the contrary, Plaintiffs stipulated to dismissal of the Griffin I lawsuit on August 21, 2012, without any involvement, consent, or notification whatsoever to Scottsdale before, during, or after the dismissal. (*See* Exhs. 4 & 6; Griffin I, DN

---

[1] Though Plaintiffs allege they timely reported Griffin I to Scottsdale, the evidence submitted in Exhibits 4 and 6 demonstrates otherwise. Specific reference to the exact date of Plaintiffs' alleged "report" of Griffin I to Scottsdale is conspicuously absent from Plaintiffs' brief and Charles Jones' Affidavit.

58.)  It was not until almost a month after dismissal of Griffin I on September 25, 2012, that the insureds' agent first sent a copy of the Griffin I Complaint to Scottsdale.  (Exhs. 4 & 6.)

 2. Plaintiffs Reported the CBR Trustee Suit After Expiration of the Policy Period

The Complaint in the CBR Trustee case, the second lawsuit for which Plaintiffs seek insurance coverage and defense, was filed on March 3, 2013.  This date falls outside the 2012 Policy Period, over three months after cancellation of the Scottsdale Policy for nonpayment. (Exh. 2, Endorsement No. 47; *see also* Aff. Charles Jones, DN 13-3, ¶ 3.)

### III.    ARGUMENT

Plaintiffs are not entitled to coverage or defense by Scottsdale under the Policy.  Because Plaintiffs have no contractual right to coverage or defense as a matter of law, they are entirely unlikely to succeed on the merits and fail to establish entitlement to the extraordinary remedy of injunctive relief.

To obtain a preliminary injunction, Plaintiffs must establish they are likely to succeed on the merits, they are likely to suffer irreparable harm in the absence of injunctive relief, the balance of equities tips in their favor, and granting injunctive relief is in the public interest. *Winter v. NRDC, Inc.*, 129 S. Ct. 365, 374 (2008) (noting preliminary injunction is extraordinary remedy only awarded upon "clear showing" of entitlement to relief).  The Sixth Circuit standard requires an especially strong likelihood or probability of success on the merits.  *Overstreet v. Lexington-Fayette Urban County Gov't*, 305 F.3d 566, 578 (6th Cir. 2002).  "A plaintiff's harm from the denial of a preliminary injunction is irreparable if it is not fully compensable by monetary damages."  *Id.* at 578.  In evaluating irreparable harm, "potential monetary damages does not constitute irreparable harm."  *Kentuckians for the Commonwealth v. U.S. Army Corps of Engineers*, 2013 WL 5278236 (W.D. Ky. 2013).  "The courts may issue a preliminary injunction

. . . only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." FRCP 65(c).

Turning to the Scottsdale Policy at issue, the federal district court exercising diversity jurisdiction should apply Kentucky law to insurance contract interpretation. *See Meade v. Great American Assurance Co.*, 198 F. Appx. 475, 477 (6th Cir. 2006). In Kentucky, by statute, "Every insurance contract shall be construed according to the entirety of its terms and conditions as set forth in the policy, and as amplified, extended, or modified by any rider, indorsement [sic], or application attached to and made a part of the policy." KRS 304.14-360.

Kentucky courts enforce the plain and unambiguous terms of an insurance contract. *State Farm Mut. Auto Ins. Co. v. Fireman's Fund American Ins. Co.*, 550 S.W.2d 554, 557 (Ky. 1977). Any recovery against the insurance company is governed solely by the terms of the insurance policy. *Id*. If the terms of an insurance policy are clear and unambiguous, the policy must be enforced as written. *Kemper Nat'l Ins. Cos. v. Heaven Hill Distilleries*, 82 S.W.3d 869, 873 (Ky. 2002). "[A]n insurance contract must be construed without disregarding or inserting words or clauses and seeming contradictions should be harmonized if reasonably possible." *Kemper*, 82 S.W. at 875-876. These rules of construction apply equally to policy exclusions and limitations, and insurance contracts must be examined in their entirety to determine if there are any applicable exceptions to coverage. *Zanco, Inc. v. Michigan Mutual Insurance Co.*, 11 Ohio St. 3d 114, 464 N.E.2d 513, 515 (1984); *see also, Ky. Ass'n of Counties All Lines Fund Trust v. McClendon*, 157 S.W.3d 626 (Ky. 2005).

Likewise, the duty to defend is contractual and arises solely from the Policy; there is no common law duty as to which the courts are free to devise rules. *Stamford Wallpaper Co. v. TIG*

*Ins.*, 138 F.3d 75, 79 (2d Cir. 1998). In application, this means "[t]he allegations of the complaint cannot compel a defense if coverage does not exist. The obligation to defend arises out of the insurance contract, not from the allegations of the complaint against the insured." *Cincinnati Ins. Co. v. Vance*, 730 S.W.2d 521 (Ky. 1987). Moreover, when a claim is subject to exclusion under the policy, there is no duty to defend. *Reliable Springs Co. v. St. Paul Fire & Marine Ins. Co.*, 869 F.2d 993, 994-995 (6th Cir. 1989).

Policy endorsements, as distinguished from policy exclusions, amend the insuring provisions of the policy itself. "An endorsement is later in time than the original Policy; and it should prevail over any conflicting provisions of the policy." *Goodin v. General Accident Fire & Life Assurance Corp.*, 450 S.W.2d 252 (Ky. App. 1970) (citing 1 Couch on Insurance, 2d, Section 4:36.) The U.S. District Court of the Eastern District of Kentucky, applying Kentucky law, has explained, "In Kentucky, [an] endorsement becomes part of the original policy when attached thereto, and the endorsement signed later in time prevails over any conflicting provisions in the original policy." *Nautilus Ins. Co. v. Hale*, 2007 WL 647565 (E.D. Ky. 2007).

Plaintiffs are not entitled to injunctive relief. As a matter of fact and law, Plaintiffs fail to satisfy their burden of proving the circumstance here meet the preliminary injunction criteria. *See Overstreet*, 305 F.2d at 573. First and foremost, Plaintiffs have no coverage for the claims at issue, so they are most unlikely to prevail on the merits of their Complaint.

A.      **Plaintiffs have No Coverage for Griffin I and the CBR Trustee Claim**

The insuring provisions of the Scottsdale D&O Policy, a claims-made policy, define the scope of Plaintiffs' coverage. *See U.S. v. Strip*, 868 F.2d 181 (6th Cir. 1989) ("A claims made policy provides coverage for claims brought against the insured only during the life of the policy.") Plaintiffs' claims do not fall within the parameters of the claims-made insuring

12

provisions under the Policy. What is more, even if they did, numerous Policy limitations and exclusions apply to disallow coverage under the Policy. The Policy's insuring provisions and exclusions are unambiguous, enforceable as a matter of law, and their applicability is supported by admissible evidence submitted herewith. Each of the reasons Plaintiffs do not have coverage under the Policy will be addressed in turn.[2]

### 1. Coverage is Not Available for Griffin I or II Because Plaintiffs Failed to Report Claim During Policy Period When First Made

As set forth above, on or before February 28, 2012, Griffin I was filed against C.A. Jones, Charles Jones, Sarah Jones, and others. Like Griffin II, Griffin I includes allegations that Defendants defrauded Griffin and misappropriated his investments. In fact, based on Griffin's allegations, it appears that Griffin II is merely the refiling of Griffin I (which was dismissed by stipulation in August 2012) with the addition of new allegations based upon the McGraw-Hill copyright infringement lawsuit and the preliminary results of the MacDonald audit. Because Griffin II arises out of the same facts, circumstances, situations, events, transactions, and causes as Griffin I, these matters constitute a single Claim first made on February 28, 2012 and, therefore, prior to the inception of the 7/1/12-11/27/12 Policy. Accordingly, Griffin II is outside the scope of coverage afforded by the 7/1/12 Policy.[3]

---

[2] Because discovery in this case has not yet begun and the record is not fully developed, Scottsdale expressly reserves the right to supplement and amend its bases for denial of coverage as discovery ensues or additional evidence becomes available.

[3] It is not entirely clear from Plaintiffs' Motion for Preliminary Injunction whether Plaintiffs are seeking coverage and defense for Griffin I. The Griffin I lawsuit was filed and dismissed before notification to Scottsdale. (Exhs. 3, 4, & 6.) Even so, the Affidavit of Charles Jones (DN 13-3), attached to Plaintiffs' Motion for Preliminary Injunction, seems to indicate that Plaintiffs are claiming Scottsdale should repay over $300,000 in defense costs they incurred relating to Griffin I. Because the Plaintiffs' Complaint (DN 1) only seeks coverage for Griffin II and the CBR Trustee claims, Scottsdale's Response brief focuses primarily on these claims. Nevertheless, Scottsdale does not owe coverage under the Policy for Griffin I either, for many of the reasons explicated herein. If Plaintiffs are permitted to revise or clarify that they are, in fact, seeking injunctive relief or relief on the merits to reimburse defense or indemnification costs already expended in Griffin I, Scottsdale reserves the right to further oppose this claim and respectfully requests the opportunity to supplement and/or file a separate brief explaining why any claim by Plaintiffs for coverage or defense related to Griffin I is legally insufficient and an inappropriate basis for injunctive relief.

The 2011 Policy does not provide coverage for this matter either. Section E.1. of the 2011 Policy states, "The Insureds shall, as a condition precedent in their rights to payment under [the D&O Coverage Section], give [Scottsdale] written notice of any Claim as soon as practicable, but in no event later than sixty days after the end of the Prior Policy Period." (Exh. 1, D&O Coverage Section at E.1.) Plaintiffs or their agents first gave notice of the Griffin I claim to Scottsdale on September 25, 2012, a date neither "as soon as practicable" nor within sixty days after the end of the 2011 Policy Period on 7/1/12. (*See* Exh. 6A and Exh. 4, evidence of first report to Scottsdale of Griffin claims on 9/25/12.) Under the express terms of the Policy, there is simply no coverage. (Exh. 1., Bus. & Man. Indem. Pol. Dec at 1, D&O Coverage Section at A.3. and E.1.)

The Scottsdale Policy is a claims-made policy rather than an occurrence-based policy. (*See infra* at 2.A.; Exhs. 1 & 2.) Under a claims-made policy, a claim is deemed made when the insured notifies the insurer of the claim, either by demand letter or lawsuit. *See, e.g., Trek Bicycle Corp. v. Mitsui Sumitomo Ins. Co.*, 2006 U.S. Dist. LEXIS 38760, 5-9 (W.D. Ky. June 7, 2006). The 2011 Policy unambiguously requires the Insureds "as a condition precedent to their rights to payment under this Coverage Section only, give Insurer written notice of any Claim as soon as practicable, but in no event later than sixty (60) days after the end of the Policy Period." (Exh. 1, D&O Coverage Section at E.1., emphasis added.) The Griffin I claim was made by February 28, 2012, when the Griffin I lawsuit against Plaintiffs was filed. (Griffin I, DN 1.) Scottsdale did not receive notice of the Griffin I claim until September 24, 2012, over 60 days after the 2011 Policy Period ended on July 1, 2012. (Exhs. 4 & 6.) Thus, Plaintiffs have no coverage for any claims based on Griffin I under the express terms of their Policy. *See*, *Trek*, 2006 U.S. Dist. LEXIS at 5-7.

In their arguments for coverage, Plaintiffs fail to recognize the critical distinction between a claims-made policy and an occurrence-based policy. This Court has previously explained the nature and scope of coverage under a claims-made policy:

> Coverage depends on the claim being made and reported to the insurer **during the policy period**. Claims-made or discovery policies are essentially reporting policies. If the claim is reported to the insurer during the policy period, then the carrier is legally obligated to pay; if the claim is not reported during the policy period, no liability attaches.

*Trek*, 2006 U.S. Dist. LEXIS 38760 at *7 (emphasis added). This Court has explained, "[T]he advantage of a claims made policy is that the insurer and the insured know their exposure at a fairly certain time. Consequently the insurer is better able to predict the limits of the exposure and more accurately to estimate the premium schedule necessary to accommodate the risk undertaken." *Id.* at *8-9. If an insured is permitted to extend the specific reporting period set forth in the claims-made policy by ignoring the temporal limits on coverage, it would negate "the inherent difference between the two contract types" and "avoid the reasoning behind a claims made policy." *Id.* at *7. Permitting such an extension of coverage would be the same as giving the insured a benefit that was not bargained for in the policy and "in effect rewrites the contract between the two parties." *Id.* The majority rule is "under a claims-made policy, failure to notify within the specified time period will defeat coverage." *Id.; see United States v. A.C. Strip*, 868 F.2d 181 (6th Cir. 1989).

Plaintiffs did not notify Scottsdale of the single Griffin claim (Griffin I and II constitute one claim under the Policy as interrelated wrongful acts) first made when the Griffin I Complaint was filed on February 28, 2012 during the 2011 Policy Period (7/1/11 – 7/1/12) or within 60 days after termination of the 7/1/11 Policy Period (before August 30, 2012) as required under the Policy. (Exhs. 4 & 6.) Because the Scottsdale Policy is a claims-made policy, this failure to

timely report during the Policy Period negates Plaintiffs' claim for coverage of Griffin I and Griffin II. (Exh. 6, first report of Griffin I to Scottsdale on 9/25/12.) *See, e.g., Cracker Barrel Old Country Store v. Cincinnati Ins. Co.*, 499 Fed. Appx. 559, 565-567 (6th Cir. 2012) (finding claim made at time of first interrelated wrongful act was outside policy period).

At different points in their brief, Plaintiffs assert they timely notified Scottsdale of the Griffin I claim. This assertion is legally and factually incorrect. (Exhs. 4 & 6.) First, Plaintiffs conveniently omit the reporting requirement from their quotation of language from the Policy. Second, Plaintiffs are imprecise concerning the date of their purported notification to Scottsdale, since they proffer no documents or evidence to establish the date(s) of notification with precision or certainty.

In Plaintiffs' Memorandum in Support of Motion for Preliminary Injunction, Plaintiffs quote Policy provisions that conveniently omit reference to the reporting requirement as part of the claims-made policy. At Page 9 of their Memorandum, Plaintiffs cite the 2011 Policy at D&O insuring provision A.1., but they omit the critical language "and reported" in place of an ellipsis. (Ps' Mem. in Supp. of Mot. for Prelim. Injunction, DN 13 at 9; Exh. 1, D&O Coverage Section at A.1.) On Page 12 of their Memorandum, Plaintiffs write, "the Policy provides coverage for the Loss of the Directors and Officers and the Company by reason of a Claim made against the Company during the Policy Period." Again, this is not an accurate statement of the express written terms of the Policy, which require claims not only to be "made" but also to be "reported" during the Policy Period when first made. (Plts.' Mem. In Supp. of Mot. for Prelim. Injunction, DN 13 at 12; Exh. 1, D&O Coverage Section at A.1.)

In Mr. Jones' Affidavit he testifies Plaintiffs notified Scottsdale of lawsuits pending against them, but he does not provide the date of any pertinent reports, and he does not include or

identify documents to evidence notification or report.  Plaintiffs have provided no documents or evidence to contradict the evidence presented in Exhibits 4 and 6 to this Response, indicating Plaintiffs' first notice and report to Scottsdale of Griffin I occurred on September 25, 2012, over 60 days after the end of the 2011 Policy Period.

2.      **Coverage Is Not Available for CBR  Trustee Claim Because Claim Was Made After Policy Expired**

Plaintiffs also seek coverage and defense for the CBR Trustee case, filed on March 4, 2013.  This lawsuit was filed, and thus the Claim was made, after the 7/1/12 Policy was cancelled for non-payment.  This cancellation became effective on November 27, 2012.  (Exh. 2, Endorsement No. 47.)  "Policy Period" is defined in the Policy as "the period from the effective date and hour of the inception of this Policy to the Policy expiration date and hour as set forth in Item 2. of the Declarations, or its earlier cancellation date and hour, if any."  (Exh. 2, General Terms & Conditions, B.8.)  The Insuring Clauses of the D&O section of the Policy require Scottsdale to pay losses for a "Claim" first made during the Policy Period.  (Exh. 2, D&O Coverage Section at A1.-3.) Because this "Claim" was first made after the Policy was cancelled, it was not "made" during the Policy Period and, accordingly, there is no coverage.

Plaintiffs contend Scottsdale must defend the CBR Trustee case under an interrelated wrongful acts theory, asserting that the CBR Trustee case alleges interrelated wrongful acts with Griffin I.  If the Plaintiffs are correct and the CBR Trustee case is interrelated with Griffin I, it is not covered because the Griffin I claim was not first made and reported during the 2011 Policy Period as explained above.  Thus, if the CBR Trustee case is an interrelated wrongful act with Griffin I or Griffin II, the claim is not covered under the Policy for the same reasons as Griffin I and Griffin II.

**3.** **Coverage is Unavailable for Griffin II and CBR Trustee Claims Because Plaintiffs Made Material Misrepresentations on Their Renewal Applications**

As a condition to coverage, the Insureds must submit renewal applications each Policy Period. "Application" is defined by the Policy as:

> all applications, including any attachments thereto, and all other information and materials submitted by or on behalf of the **Insureds** to the **Insurer** in connection with the **Insurer** underwriting this **Policy** or any policy of which this **Policy** is a renewal or replacement. All such applications, attachments, information, materials and documents are deemed attached to and incorporated into this **Policy**.

(Exh. 1, General Terms & Conditions, B.1.; Exh. 2, General Terms & Conditions, B.1.)

Plaintiffs agreed to the following when they accepted the Policy:

1.  The statements in the Application are their representations, that such representations shall be deemed material to the acceptance of the risk or the hazard assumed by Insurer under this Policy, and that this Policy and each Coverage Section are issued in reliance upon the truth of such representations; and

2.  In the event the Application, including materials submitted or required to be submitted therewith, contains any misrepresentation or omission made with the intent to deceive, or contains any misrepresentation or omission which materially affects either the acceptance of the risk or the hazard assumed by Insurer under this Policy, this Policy, including each and all Coverage Sections, shall be void ab initio with respect to any Insureds who had knowledge of such misrepresentation or omission.

(Exh. 1, Endorsement No. 46, Section D.)

Plaintiffs signed and submitted their 2012 Policy Application on June 21, 2012. (Exh. 7, E-Risk Services RENEWAL Appplication for Business and Management (BAM) Indemnity Insurance, Scottsdale document numbers Scottsdale 001191 – 001211.) Based on information now known to Scottsdale, Plaintiffs' renewal Application contains misrepresentations material to Scottsdale's issuance of the Policy.

Section IV.1 of the Application's General Information Section asks:

> Within the last three years, has any person or entity proposed for this insurance been the subject of or involved in any litigation, administrative proceeding, demand letter or formal or informal governmental investigation or inquiry including any investigation by the Department of Labor or the Equal Employment Opportunity Commission. If yes, please provide details on a separate page.

Plaintiffs answered "No" to this question. (Exh. 7 at 3.) Their answer, however, is wrong. When Charles Jones signed the Scottsdale Policy renewal Application on June 21, 2012 (Exh. 7 at 5, Scottsdale document number Scottsdale 001195), Plaintiffs were already involved in Griffin I, filed on February 28, 2012. Plaintiffs were also subject to an EEOC claim and state court race discrimination lawsuit filed on December 6, 2011, which was reported to Scottsdale for coverage under the Employment Practices Liability provisions of the Policy.[4]

Under Kentucky law, "a misrepresentation voids an insurance policy if the misrepresentation is 'material' to the acceptance of risk or if the insurance company would not have issued the policy if the true facts had been made known." *Cont'l Cas. Co. v. Law Offices of Melbourne Mills, Jr., PLLC*, 676 F.3d 534, 538 (6th Cir. 2012) (citing K.R.S. § 304.14-110). Section 304.14-110 of the Kentucky Insurance Code dictates this result, indicating that "[m]isrepresentations, omissions, and incorrect statements" on insurance applications prevent recovery if the statements are:

> (1) Fraudulent; or (2) Material either to the acceptance of the risk, or to the hazard assumed by the insurer; or (3) The insurer in good faith would either not have issued the policy or contract, or would not have issued it at the same premium rate, or would not have issued a policy or contract in as large an amount, or would not have provided coverage with respect to the hazard resulting in the loss, if the true facts had been made known to the insurer as required either by the application for the policy or contract or otherwise.

---

[4] Evidence of Plaintiffs' report to Scottsdale on 12/6/11 of the alleged race discrimination in employment claim against insureds brought by Brett Davis is attached as Exh. 8. Because this employment claim is not related to Griffin I and II, the CBR Trustee case, and related lawsuits listed in Exhibit 3, it is intentionally omitted from Exh. A to the Affidavit of M. Zartman, listing All Notices of Claims Received by Scottsdale related to the subject litigation.

K.R.S. § 304.14-110. *See also*, *Koch v. Owners Ins. Co.*, 2014 U.S. Dist. LEXIS 9930, *7-8 (W.D. Ky. January 28, 2014) (noting representations made to an insurance company which are false and material to the risk will defeat recovery on the policy issued thereon even though made innocently).

Plaintiffs misrepresented their involvement in active, open litigation to Scottsdale in their Policy Application. (Exh. 7.) The misrepresentations were material. Thus, Plaintiffs' material misrepresentations operate to void the Policy under Endorsement No. 46 and Kentucky law. (Exh. 1, Endorsement No. 46); *see also* KRS § 304.14-110.

### 4. Coverage is Precluded by Insured v. Insured Exclusion

The Policy contains an exclusion for claims brought by one Policy insured against another insured under the Policy. This provision states:

> Insurer shall not be liable for Loss under this Coverage Section on account of any Claim:
>
> e.   brought or maintained by, on behalf of, in the right of, or at the direction of any Insured in any capacity, any Outside Entity or any person or entity that is an owner of or joint venture participant in any Subsidiary in any respect and whether or not collusive . . . .

(Exh. 1, D&O Coverage Section, C.1.e.) This provision excludes claims that are brought by any person who is an owner of a Subsidiary in any respect. David Griffin, the plaintiff filing suit against C.A. Jones and its affiliates in Griffin I and Griffin II, is an owner of a Subsidiary as defined in the Policy. "Subsidiary" is defined in relevant part as:

> a.   any entity of which more than fifty percent (50%) of the outstanding securities representing the present right to vote for the election of such entity's directors or managers are owned by the Parent Company, directly or indirectly, if any such entity:
>      i.    was so owned on or prior to the inception date of this Policy; or
>      ii.   becomes so owned after the inception date of this Policy . . . .

(Exh. 1, General Terms & Conditions, B.11.)   A Subsidiary is any entity that is at least 50%

owned by a Parent Company, directly or indirectly.   "Parent Company" is defined in the Policy

as the entity first named in Item 1. of the Declarations, which is C.A. Management Group.  (Exh.

1, General Terms & Conditions, B.7.)  However, "Parent Company" is amended by Endorsement

2 to include other companies, including:

> Integrated Computer Solutions, Inc. ("ICS")
> Black Rock Investments ("BRI")

(Exh. 1, Endorsement No. 2.)   Each of the companies listed in the Endorsement becomes a

Parent Company.

   According to various filings in Griffin I and Griffin II, Griffin is 50% owner of ICS and

50% owner of BRI.  (Griffin II, Memorandum Op., DN 39 at 3.)  BRI and ICS own SEB at 92%

and 8% respectively.  (*Id.*, Mem. in Supp. of Mot. to Dismiss Am. Compl., DN 21-1 at 11.)  BRI

and ICS also own CBR at 92% and 8% respectively.   Griffin made significant investments

directly into SEB and CBR and owns securities in those two companies as a result.  (*Id.*, Mem.

Op., DN 39 at 4-5, 18.)

   Based on the Policy definitions outlined above, SEB and CBR are Subsidiaries since they

are owned at least 50% by a Parent Company, BRI.  Since Griffin is 50% owner of BRI and ICS,

Griffin has indirect ownership of the Subsidiaries, SEB and CBR.   Further, Griffin has invested

substantial amounts of money directly into both SEB and CBR pursuant to his ownership

interest.  Since David Griffin is an owner of a Subsidiary, any claim "brought or maintained by,

on behalf of, in the right of, or at the direction of" him is excluded from the coverage by the

Policy's insured v. insured exclusion.  (Exh. 1, D&O Coverage Section, C.1.e.)  Both Griffin I

and II were brought and maintained by Griffin, so Plaintiffs' claims for coverage or defense of

Griffin I and Griffin II, as well as the CBR Trustee case if an interrelated claim, are excluded from coverage under the Policy.

### 5. Coverage is Barred by Fraudulent and Criminal Acts Exclusion

The Policy contains an exclusion for claims alleging dishonest, fraudulent, or criminal acts by the Insured. The Policy excludes coverage for any claims:

>  f.    alleging, based upon, arising out of, attributable to, directly or indirectly resulting from, in consequence of, or in any way involving:
>
> >     i.    any dishonest, deliberately fraudulent or criminal act of an Insured provided, however this exclusion f.i. shall not apply unless and until there is a final judgment against such Insured as to such conduct;
>
> >     ii.   the gaining of any profit, remuneration or financial advantage to which any **Directors and Officers** were not legally entitled; provided, however this exclusion f.ii. shall not apply unless and until there is a final judgment against such Directors and Officers as to such conduct.

(Exh. 1, D&O Coverage Section, C.1.f.)

Many of the Complaints against Jones and C.A. Jones contain the precise allegations outlined in this Policy exclusion. Numerous Plaintiffs have alleged Jones fraudulently and illegally altered international textbooks to disguise and resell them as more expensive U.S. textbooks, all in violation of federal copyright infringement laws. (*See, The McGraw-Hill Companies, Inc., et al. v. Jones, et al.*, S.D. NY, No. 1-12-cv-07085, First Am. Compl., DN 31 at ¶¶ 2-4; Griffin II, Am. Compl, DN 18 at ¶¶ 68-75; CBR Trustee case, Compl., DN 1 at ¶¶ 33-39.) The allegations against Charles Jones and C.A. Jones for dishonest, deliberately fraudulent, and possible criminal acts are serious and ongoing.

The Policy exclusion for dishonest acts only applies when "there is final judgment against such [Insured] as to such conduct." (Exh. 1, D&O Coverage Section, C.1.f.) In *The*

*McGraw-Hill* case, the Court issued a permanent injunction against insureds Charles Jones and C.A. Jones prohibiting them from engaging in the precise activity alleged against them, namely altering international books and rebinding them as U.S. editions. (*See, The McGraw-Hill Companies, Inc., et al. v. Jones, et al.*, S.D. NY, No. 1:12-cv-07085, Stipulated Permanent Injunction, 2/25/13, DN 63). The order of permanent injunction constitutes a final judgment against Jones and C.A. Jones, because all other claims against them were dismissed with prejudice after entry of the Order. (*See id.*, DN 68.) Since the permanent injunction prevents Jones and C.A. Jones from engaging in the "dishonest," "deliberately fraudulent," and "criminal" conduct alleged in the McGraw-Hill case, the permanent injunction is a "final judgment against such Insured as to such conduct" alleged in McGraw Hill, Griffin II and the CBR Trustee case, as expressly excluded under Section C.1.f. of the Policy.

### 6. Coverage is Precluded by the Publisher Exclusion

Policy Endorsement No. 37 contains an exclusion to Section C.1. of the Policy's D&O Coverage Section by providing that Scottsdale shall not be liable for Loss on account of any Claim:

> alleging, based upon, arising out of, attributable to, directly or indirectly resulting from, in consequence of, or in any way involving:
>
> (i) the theft, conversion, infringement, improper duplication or misappropriation of an idea, concept, copyright, trademark, trade name or literary property; or
>
> (ii) for false, misleading, defamatory, obscene, or objectionable advertising or publication.

(Exh. 1, Endorsement No. 37.)

The Griffin II and CBR Trustee case include allegations Jones, among others, purchased low-cost international editions of textbooks, rebound the textbooks, removed copyright marks, and then marketed them as original U.S. editions. (Griffin II, Am. Compl., DN 18 at ¶¶ 68-75;

CBR Trustee case, Compl., DN 1 at ¶¶ 33-39.)  Both Griffin II and the CBR Trustee case allege

Jones' actions were illegal and constitute violations of the Copyright Act, the Lanham Act, and

Federal Trade Commission regulations.  (*Id.*)  As such, both lawsuits allege, are based upon,

arise out of, are attributable to, directly or indirectly resulted from, are in consequence of, or

involve infringement, improper duplication, and misappropriation of ideas, concepts, copyrights,

trademarks, trade names, and literary property.  Accordingly, no coverage for Griffin II and the

CBR Trustee case is available under the Policy.  (*See* Exh. 1, Endorsement No. 37.)

**7.      Coverage is Precluded by the Intellectual Property Exclusion**

For similar reasons, Plaintiff C.A. Management Group's claims are barred by the

intellectual property exclusion contained in Section C.2.b. of the D&O Coverage Section.  (This

provision only applies to Insuring Clause A.3. which applies to the Loss of the Company.)  The

exclusion states the Insurer shall not be liable for Loss on account of any Claim:

> alleging, based upon, arising out of, attributable to, directly or indirectly resulting
> from, in consequence of, or in any way involving:
>
> i.      any actual or alleged infringement, misappropriation, or violation of
> copyright, patent, service marks, trademarks, trade secrets, title or other
> proprietary or licensing rights or intellectual property of any products,
> technologies or services[.]

(Exh. 1, D&O Coverage Section, C.2.b.)

As discussed above, Griffin II and the CBR Trustee case include allegations that C.A.

Jones Management Group's actions involving the international editions of textbooks constitute

violations of state and federal copyright laws.  (Griffin II, Am. Compl., DN 18 at ¶¶ 68-75; CBR

Trustee case, Compl., DN 1 at ¶¶ 33-39.)  The lawsuits both allege, are based upon, arise out of,

are attributable to, directly or indirectly result from, are in consequence of, or involve violation

of copyright laws and are therefore excluded under the Policy.  (Exh. 1, D&O Coverage Section,

C.2.b.)

**8. Coverage for Griffin II is Barred by the Securities Fraud Exclusion**

Similar to the fraud and criminal acts exclusion, Plaintiffs' claims are also barred by the securities fraud exclusion found in Section C.1.n. of the D&O Coverage Section. This provision excludes Claims:

> [A]lleging, based upon, arising out of, attributable to, directly or indirectly resulting from, in consequence of, or in any way involving:
>
> * * *
>
> ii.    the actual or alleged violation of the Securities Act of 1933, the Securities Exchange Act of 1934, any rules or regulations of the Securities Exchange Commission adopted thereunder, any federal, state or provincial statute or common law regulating securities similar to the foregoing, including any amendments thereto, any rules or regulations adopted pursuant thereto in connection with any Wrongful Act actually or allegedly committed subsequent to the consummation of an initial public offering of securities of the Company.
>
> * * *

(Exh. 1, D&O Coverage Section, C.1.n.)

The Griffin II Complaint contains a specific allegation of Securities Fraud in Count I of the Amended Complaint. (Griffin II, Am. Compl., DN 18 at ¶¶ 88-93.) It alleges the Jones Plaintiffs offered and sold securities through use of interstate commerce to Griffin, who purchased those securities in reliance upon their material misrepresentations. (*Id.*) The Griffin II case alleges, is based upon, arises out of, is attributable to, directly or indirectly results from, is in consequence of, or involves an alleged violation of the Securities Exchange Act of 1934 or similar laws and is potentially excluded under the Policy.

**9. Plaintiff Global Booksellers Is Not an Insured and Sarah Jones May Not Be an Insured Under the Policy**

The Policy's D&O Coverage Section only provides coverage for Insureds, as that term is defined under the Policy. An insured is defined as "the Company and the Directors and Officers." (Exh. 1, D&O Coverage Section, B.5.) "Company" is defined as the Parent Company

and any Subsidiaries. (Exh. 1, General Terms & Conditions Section, B.7.) The Parent Company listed on the Declarations is C.A. Jones Management Company. The term "Parent Company" is amended for the D&O Coverage in Endorsement Nos. 2, 3 and 4 which list an additional 22 companies as "Parent Companies." (Exh. 1, Endorsement Nos. 2-4.) Endorsement No. 2 includes in the list Plaintiff Technology Associates, Inc.[5] None of the Endorsements, however, list Plaintiff Global Book Resellers, LLC as a Parent Company or otherwise as an Insured. (Exh. 1.) Accordingly, the Scottsdale Policy does not provide coverage for Plaintiff Global Book Resellers, LLC.

It is not clear from the evidence at this time whether Sarah Jones is an Insured under the Policy. "Insured" includes the Company and Directors and Officers. (Exh. 1.) Directors and Officers are defined in relevant part as any person who was, now is, or shall become:

   a.   a duly elected or appointed director, officer, or similar executive of the Company, or any member of the management board of the Company;

   b.   a person who was, is or shall become a full-time or part-time employee of the Company…"

(Exh. 1.)

The Complaint in Griffin I alleges that Sarah Jones is the President of C.A. Jones Management Company. (Griffin I, DN 1 at ¶ 3.) Sarah Jones denies this allegation. (Griffin I, Answer to Complaint, 8/3/12, DN 38 at ¶ C.) Also in Griffin I, Charles Jones submitted a Declaration wherein he stated that Sarah Jones "is not, nor has she ever been an officer of any of SEB, CBR or Blackrock. She is listed with the Kentucky Secretary of State as the corporate secretary for ICS, but she has never had an active role in that company." (Griffin I, Declaration of Charles A. Jones in Opp. to Plaintiff's Mot. to Appoint Receiver, 8/3/12, DN 39 at ¶ 50.)

---

[5] The Endorsement actually lists Technology Associates, LLC, but there is no Technology Associates, LLC identified on the Kentucky Secretary of State website, so it is assumed the Endorsement was meant to read "Technology Associates, Inc."

Based on the Joneses' own statements, Sarah Jones is not an officer of any of the companies. Although discovery is incomplete and the record is not yet developed, Plaintiffs have not established Sarah Jones is an Insured under the Policy.

For the multitude of reasons addressed herein, Plaintiffs have no coverage under the Policy. Because they have no contractual right to coverage, they also have no contractual right to defense as a matter of fact and law.

**B.** **Scottsdale has No Duty to Defend Plaintiffs in Griffin II or the CBR Trustee Case**

Because Scottsdale has no contractual obligation of coverage for Plaintiffs' claims in Griffin II and the CBR Trustee case, it has no contractual duty to defend Plaintiffs in these lawsuits.[6] *See Reliable Springs*, 869 F.2d at 994-95 (explaining there is no duty to defend a claim that is excluded from coverage).

**1.** **Non-Duty to Defend Endorsement to Policy Expressly Eliminates Duty to Defend**

The Non-Duty to Defend provisions of the Policy delineate Scottsdale's contractual obligations of defense under the Policy. An insurer's duty to defend litigation filed against its insured is strictly a contractual duty and does not arise from any statute or common law. *See, e.g., Kentucky League of Cities Ins. Svcs. Assoc. v. Argonaut Central Ins. Co.*, 2013 U.S. Dist. LEXIS 2663 *12-13 (W.D. Ky 2013). An unambiguous insurance contract "is to be read according to its plain meaning, its true character and purpose, and the intent of the policies." *Peoples Bank & Trust Co. v. Aetna Cas. & Sur. Co.*, 113 F.3d 629, 636 (6th Cir. 1997). "[A]n insurance contract must be construed without disregarding or inserting words or clauses and seeming contradictions should be harmonized if reasonably possible." *Kemper*, 82 S.W. at 875-

---

[6] Plaintiffs' Complaint does not seek coverage or defense for Griffin I. Scottsdale does not have a duty to defend Griffin I and specifically reserves the right to oppose coverage and defense of this claim should it be asserted by Plaintiffs.

876. Kentucky law requires the Policy to be construed based on all terms set forth in the policy as modified by policy endorsements. *See* KRS 304.14-360.

Endorsement No. 35 to the 2011 Policy, entitled "Non-Duty to Defend – Directors and Officers," states:

Section F., **SETTLEMENT AND DEFENSE**, is replaced by:

F.  **SETTLEMENT AND DEFENSE**

1. It shall be the duty of the **Insureds** and not the duty of the **Insurer** to defend any **Claim**.

2. The **Insureds** agree not to settle or offer to settle any **Claim**, incur any **Costs, Charges and Expenses** or otherwise assume any contractual obligation or admit any liability with respect to any **Claim** without the prior written consent of the **Insurer**, such consent not to be unreasonably withheld. The **Insurer** shall not be liable for any settlement, **Costs, Charges and Expenses**, assumed obligation or admission to which it has not consented. The **Insurer** shall have the right to investigate and settle any **Claim**; provided, however, no settlement shall be made without the consent of the **Parent Company**, such consent not to be unreasonably withheld. The **Insureds** shall promptly send to the **Insurer** all settlement demands or offers received by any **Insured** from the claimant(s).

3. The **Insureds** agree to provide the **Insurer** with all information, assistance and cooperation which the **Insurer** reasonably requests and agree that, in the event of a **Claim**, the **Insureds** will do nothing that shall prejudice the position of the **Insurer** or its potential or actual rights of recovery. The **Insurer** may make any investigation it deems necessary.

4. The **Insurer** shall, on a quarterly basis, advance on behalf of the **Insureds** covered **Costs, Charges and Expenses** which the **Insureds** have incurred in connection with **Claims** made against them, prior to disposition of such **Claims**. Any advancement of **Costs, Charges and Expenses** shall be subject to the condition that such advanced amounts shall be repaid to the **Insurer** by the **Insureds** severally according to their respective interests if and to the extent the **Insureds** shall not be entitled to coverage for such **Costs, Charges and Expenses** under the terms and condition of this **Policy**.

(Exh. 1 at Endorsement No. 35.)

The Non-Duty to Defend Endorsement modifies and amends the coverage provisions of the 2011 Policy. *See, e.g., Goodin*, 450 S.W.2d at 256. The first sentence is critical: "**It shall be the duty of the Insureds and not the duty of the Insurer to defend any Claim.**" (Exh. 1, Endorsement No. 35, F.1., emphasis added.) This Policy language is unambiguous, so it must be enforced as written. *See* KRS 304.14-360; *State Farm*, 550 S.W.2d at 557 (noting plain and unambiguous terms of insurance contract must be enforced as written). Plaintiffs, not Scottsdale, have the duty to defend any claim asserted against them. To interpret the first sentence in any other manner would eliminate or disregard the Policy's essential terms and revise its meaning contrary to Kentucky law. Plaintiffs entirely, consistently, and flagrantly ignore this critical governing provision of the Policy because they have no plausible arguments to avoid it.

The second paragraph of the Non-Duty to Defend Endorsement includes the mandate: "The **Insurer** shall not be liable for any settlement, **Costs, Charges and Expenses**, assumed obligation or admission to which it has not consented." Scottsdale has not consented to any settlements, costs, charges, or expenses assumed by Plaintiffs, so it is not liable for these amounts. (*See* Exh. 1, Endorsement No. 35, F.2.) Plaintiffs alleged they have incurred over $300,000 in defense costs for Griffin I and II and the CBR Trustee case, all without Scottsdale's consent. The unambiguous, simple, and direct terms of the Policy dictate Scottsdale is not liable for this amount because it never consented to the Plaintiffs' incurring of or payments for these costs, charges, or expenses. (*See id.*)

The fourth paragraph of the Non-Duty to Defend Endorsement requires, "The **Insurer** shall, on a quarterly basis, advance on behalf of the **Insureds _covered_ Costs, Charges and Expenses**." (Exh. 1, Endorsement No. 35, F.1.4., emphasis added.) The critical word here is

"***covered***."  Plaintiffs are not entitled to coverage for the Griffin I and II and CBR Trustee cases.  (*See infra* at III.A.)  Pursuant to the unambiguous, direct, plain meaning of the language of the Non-Duty to Defend Endorsement, Scottsdale is not financially responsible for costs, charges, or expenses incurred by Plaintiffs to defend Griffin I and II and the CBR Trustee case because these claims are not covered under the Policy.  (*Id.*)

Paragraph 4 of the Non-Duty to Defend Endorsement also requires any "advanced amounts shall be repaid to the **Insurer** by the **Insureds** . . . to the extent the **Insureds** shall not be entitled to coverage for such **Costs, Charges and Expenses**."  (Exh. 1, Endorsement No. 35, F.1.4.)  Again, the Policy language is unambiguous, direct, and specific.  The Plaintiffs maintain ultimate financial responsibility for all defenses costs when there is no coverage under the Policy, even if Scottsdale had advanced defense costs to Plaintiffs.  Because Plaintiffs are not entitled to coverage for Griffin I and II and the CBR Trustee case, they are not ultimately entitled to retain any payments whatsoever from Scottsdale for defenses costs.  (*See id.*); *see also,* FRCP 65 (requiring insureds post security for advanced costs to ensure repayment of costs not covered under insurance policy).

The duty-to-defend cases cited by Plaintiffs are entirely inapposite.  Each case cited by Plaintiffs concludes the insurer owes a duty to defend based on policy language imposing that obligation on the insurance carrier that is not present here.  The cases relied upon by Plaintiffs do not interpret, apply, or construe a Non-Duty to Defend provision similar to Endorsement No. 35 and have no bearing upon its application here.  *See, e.g., James Graham Brown Foundation, Inc. v. St. Paul Fire & Marine Ins. Co.*, 814 S.W.2d 273 (Ky. 1991); *In re Worldcom, Inc.*, 354 F.Supp.2d 455, 464.

## 2.    The Allocation Provision of the Non-Duty to Defend Endorsement Does Not Re-Impose a Duty to Defend on Scottsdale

The 2011 Policy unambiguously imposes the duty to defend on Plaintiffs, not Scottsdale. The "Allocation" provisions of Endorsement No. 35 reiterate and reinforce that Scottsdale has no duty to advance, reimburse, or pay Plaintiffs' defense costs when Plaintiffs' claims are not covered by the Policy.   (*Id.*)  (Exh. 1, Endorsement No. 35, "Allocation" Section.)

The "Allocation" provisions of the Non-Duty to Defend Endorsement explain that when some claims are covered and some are not, Scottsdale should allocate defense costs to the covered claims or insureds based upon relative financial exposure for the covered claims only. (*Id.*)   The Allocation provision thereby expressly reinforces and reiterates Scottsdale's lack of duty to defend uncovered claims.  (*Id.*)

Case law addressing similar defense cost allocation provisions confirms this construction of the Policy terms.

> [T]he policy language shows that the scope of the duty [to advance defense costs] is equivalent to the scope of a duty to indemnify.  First, Section I.B.1 explicitly provides that Hannover did not have a duty to defend, which relieved Hannover of the duty to pay defense costs associated with potentially covered claims. Requiring Hannover to advance costs associated with potentially covered claims, by holding that the scope of Hannover's duty to advance costs is the same as the scope of the duty to defend would nullify much of the benefit that Hannover received from Section I.B.1.  Second, the policy language about Hannover's duty to pay costs explicitly provides that the duty only attached to costs associated with claims that the policy covered . . . . [T]he policy language indicates that the scope of Hannover's duty to advance defense costs mirrored that of the duty to indemnify and only extended to costs actually covered by the policy.

*City of Warren v. International Ins. Co.*, 524 Fed. Appx. 254, 257 (6th Cir. 2013).

Likewise, in *XL Specialty Ins. Co. v. Level Global Investors*, 874 F.Supp.2d 263, 288 (S.D.N.Y. 2012), a New York federal district court held defense costs are only required to be advanced when a claim is covered.   The court noted the insured could not point to any language

in the policy to arguably support its claim that the insurer had a duty to advance defense costs pending judicial determination of whether a policy exclusion applied.  *Id.*

The Allocation section of Endorsement No. 35 merely explains what happens when a claim alleged against the insureds includes both covered and uncovered matters.   "[T]he Insureds and Insurer shall allocate such amount between covered Loss and uncovered Loss based upon the relative legal and financial exposures and the relative benefits obtained by the parties to covered and uncovered matters."  (Exh. 1, Endorsement 35, Allocation, ¶ 1.)  Moreover, when the insured and insurer cannot agree on the allocation, "the Insurer shall advance on a current basis Costs, Charges and Expenses <u>which the Insurer believes to be covered</u> under this Policy until a different allocation is negotiated or arbitrated." (*Id.* at ¶ 2, emphasis added.)  Accordingly, this provision places the determination of whether a claim is covered in the first instance within the judgment of the insurer.  (*Id.*); *see, e.g.,  Seeger v. Gulf Underwriters Ins. Co.*, 2005 U.S. Dist. LEXIS 47980 (N.D. Ill. 2005) (finding allocation provisions vested insurer with discretion to decide whether to advance defense costs for covered claims); *Commercial Capital Bankcorp, Inc. v. St. Paul Mercury Ins. Co.*, 2006 U.S. Dist. LEXIS 26340 (C.D. Cal. 2006) (holding insurer had discretion to determine which covered claims and defense costs would be advanced under allocation provision).

The Duty to Defend Endorsement is unambiguous and enforceable as written.  Plaintiffs' claims are not covered, and neither are their defense costs under the expenses terms of the Policy.  *See, e.g., City of Warren*, 524 Fed. Appx. At 257 (finding allocation provision of non-duty-to-defend provisions unambiguous and enforceable as written).

### 3. Plaintiffs Are Not Entitled to Coverage or Defense Because They Breached Their Obligation to Obtain Insurer's Consent

Plaintiffs violated their obligation to advise Scottsdale of the Griffin I lawsuit under Endorsement No. 35, Non-Duty to Defend, which states:

> The Insureds agree not to settle or offer to settle any Claim, incur any Costs, Charges and Expenses or otherwise assume any contractual obligation or admit any liability with respect to any Claim without the prior written consent of the Insurer, such consent not to be unreasonably withheld. The Insurer shall not be liable for any settlement, Costs, Charges and Expenses, assumed obligation or admission to which it has not consented.

(Exh. 1, Endorsement No. 35, F.2.)

Plaintiffs received service of the Complaint in Griffin I, defended the litigation, and settled the litigation, all without notice to Scottsdale. (Exhs. 4 & 6.) According to Plaintiffs' Complaint, they have "incurred Costs, Charges and Expenses" of $300,000 defending the litigation. Plaintiffs also assumed a "contractual obligation" when they entered the Griffin I stipulation or settlement agreement, again without notice to or consent from Scottsdale. To the extent Plaintiffs ever gave Scottsdale notice of Griffin I, their report to Scottsdale occurred after the lawsuit was dismissed. (Exh. 6.)

When the insured resolves litigation without its insurer's notice, knowledge, or consent, the insurer is prejudiced. *See, e.g.*, *Emplrs Reinsurance Corp. v. Mut. Ins. Co.*, 2007 U.S. Dist. LEXIS 61406. *11-12 (W.D. Ky. Aug. 17, 2007) ("The primary underlying purpose of a notice requirement is to allow the insurer to assess and control the risk, and the failure of the insured to provide notice severely undercuts this purpose…") (citing 13 Couch on Ins. § 193:68); *see also*, *Prince George's County v. Local Gov't Ins. Trust*, 879 A.2d 81, 89 (Md. 2005) (applying Maryland law and holding that an insurer is prejudiced as a matter of law when "the insured has presented the insurer with a *fait accompli* by delaying notice until after the judgment").

Here, Plaintiffs claim they already spent over $300,000 in defense costs they now want Scottsdale to reimburse, without submitting a shred of evidence regarding when, where, why, and how exactly this money for "defense costs" was incurred or spent. Plaintiffs' settlement of Griffin I without report or notice to or the knowledge, consent, or involvement of Scottsdale prejudiced Scottsdale's rights to such an extent that Plaintiffs are estopped from claiming any further rights to coverage or defense for claims regarding Griffin I or other claims based on Griffin I interrelated wrongful acts. Under the express terms of the Policy, Plaintiffs' claims for costs of defense and indemnification of Griffin I are now barred.

Policy Endorsement No. 35 unambiguously states Scottsdale "shall not be liable for any settlement, costs, charges and expenses, assumed obligation or admission to which it has not consented." (Exh. 1, Endorsement No. 35, F.2.) Scottsdale did not consent to any obligations Plaintiffs assumed relating to Griffin I, Griffin II, or the CBR Trustee case, so Scottsdale is not financially responsible for those obligations now.

**C.**    **Plaintiffs Will Not Suffer Irreparable Harm If Their Motion Is Denied**

Plaintiffs allege they will suffer immediate and irreparable injury if Scottsdale is not compelled to provide coverage and defense of the Griffin II and CBR Trustee cases. (Plaintiffs' Mem. in Supp. of Mot. for Preliminary Injunction, DN 13 at 1.) Plaintiffs support their allegation of imminent, irreparable harm with the Affidavit of Charles Jones, who testifies he is currently having difficulty funding the legal defense of six pending lawsuits involving himself or his companies "not covered by the policy with Scottsdale." (C. Jones Aff., DN 13-3 at 3.) Mr. Jones also states, "My companies and I have incurred over $300,000 in legal fees to defend these three suits," referring to Griffin I, Griffin II, and the CBR Trustee case. Though he alleges he is

under financial stress, Mr. Jones does not claim he or his companies are on the verge of financial collapse or bankruptcy.

Mr. Jones attaches no evidence of the "over $300,000 in legal fees" he or his companies have incurred, no evidence indicating to whom these fees are owed or were paid, and no evidence indicating when, how, or why the fees were incurred. Plaintiffs have not explained how the $300,000 of legal expenses they allegedly incurred are causally related to the Griffin II and CBR Trustee cases, rather than the six separate ongoing lawsuits Plaintiffs concede are not covered by the Policy. From a temporal standpoint, if Mr. Jones and "his companies" (not identified by name) seek injunctive relief for defense costs associated with Griffin I, filed in February 2012, it is difficult to imagine how two-year-old legal expenses for a now-dismissed lawsuit are currently presenting immediate and irreparable harm. *See Abney v. Amgen, Inc.*, 443 F.3d 540, 552 (6th Cir. 2006).

Most importantly, the harm Plaintiffs allege is purely monetary. "Potential monetary damages [do] not constitute irreparable harm" for the purpose of injunctive relief. *Baker v. Adams County/Ohio Valley Sch. Bd., 310 F.3d 927, 930 (6th Cir. 2002)*. Though Plaintiffs' economic loss or hardship may be regrettable, whether real or speculative, it still constitutes monetary damages not sufficient to warrant injunctive relief. *Id.*; *see, e.g., Bondex Int'l, Inc. v. The Hartford Accident and Indemnity Co.*, 2006 WL 2057461 (N.D. Ohio July 21, 2006) (stating the duty to defend and indemnify an insured does not give rise to irreparable injury necessitating preliminary injunctive relief). Because Plaintiffs' harm is only pecuniary, injunctive relief is not warranted.

**D.**     <u>**Plaintiffs Fail to Establish Factors Warranting Injunctive Relief**</u>

"A preliminary injunction is an extraordinary remedy which should be granted only if the movant carries his or her burden of proving that the circumstances clearly demand it." *Overstreet v. Lexington-Fayette Urban County Gov't,* 305 F.3d 566 (6th Cir. 2002). Examining the four factors required for injunctive relief, Plaintiffs have not established their burden of proving a strong likelihood of success on the merits because they are not entitled to coverage or defense under the Policy. Second, Plaintiff will not suffer irreparable harm if an injunction is not issued, since the potential harm alleged is purely monetary. Third, the issuance of the injunction would cause harm to Scottsdale in terms of monetary damages. Fourth, the public interest is unaffected if Plaintiffs' Motion for Preliminary Injunction is denied.

## IV.    <u>CONCLUSION</u>

For the foregoing reasons, Plaintiffs' Motion for Preliminary Injunction should be denied.

Respectfully submitted,

<u>s/ Jill F. Endicott</u>
Jill F. Endicott
DINSMORE & SHOHL LLP
101 South Fifth Street, Suite 2500
Louisville, KY 40202
(502) 581-8000
Fax: (502) 581-8111
*Counsel for Defendant, Scottsdale Indemnity
Company*

## CERTIFICATE OF SERVICE

I hereby certify that on February 4, 2014, I electronically filed the foregoing with the clerk of the court by using the CM/ECF system, which will send a notice of electronic filing to the following:

Kent Wicker
Lesley Bilby
DRESSMAN BENZINGER LAVELLE PSC
2100 Waterfront Plaza
Louisville, KY 40202
(502) 572-2500
Fax: (502) 572-2503

Richard W. Jones
LAW OFFICE OF RICK JONES PLLC
314 Main Street
Murray, KY 42071
(270) 753-1295
Fax: (888) 383-6825
*Counsel for Plaintiffs*

s/ Jill F. Endicott
*Counsel for Defendant, Scottsdale Indemnity Company*