## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF KENTUCKY
## PADUCAH DIVISION
## CIVIL ACTION NO. 5:13-CV-00173-TBR-LLK

C.A. JONES MANAGEMENT
GROUP, LLC, *et al.*,                                    Plaintiffs/Counterclaim Defendants,

v.

SCOTTSDALE INDEMNITY COMPANY,          Defendant/Counterclaim Plaintiff.

## MEMORANDUM OPINION

C.A. Jones Management Group, LLC filed this action against Scottsdale Indemnity Company, disputing Scottsdale's denial of coverage under two claims-made-and-reported policies. In response, Scottsdale counterclaimed for declaratory judgment. Now, Scottsdale seeks summary judgment on C.A. Jones Management Group's three-count complaint and on its counterclaim. For the reasons that follow, Scottsdale Indemnity Company's Motion for Summary Judgment, R. 53, is **GRANTED**.

### I.

### A.

The facts of this insurance coverage dispute are undisputed. In 2011, Scottsdale Indemnity Company issued Business and Management Indemnity Policy No. EKI3042564 to C.A. Jones Management Group, LLC. *See* R. 17-1 at 5–7 (Policy No. EKI3042564: Declarations). The "Policy Period" spanned from July 1, 2011 to July 1, 2012. *See id.* at 10, § B.9 (Policy No. EKI3042564: General Terms and Conditions); *id.* at 5. C.A. Jones Management Group renewed Policy No. EKI3042564 with Scottsdale on July 1, 2012, through Business and Management Indemnity Policy No. EKI3069673. *See* R. 17-2 at 5 (Policy No. EKI3069673: Declarations). Originally, the "Policy Period"

1

spanned from July 1, 2012 to July 1, 2013. *Id.* at 10, § B.9 (Policy No. EKI3069673: General Terms and Conditions); *id.* at 5.   Due to nonpayment of the contracted-for premium, however, Scottsdale ceased providing coverage under Policy No. EKI3069673 on November 27, 2012.  *See id.* at 100 (Policy No. EKI3069673: Endorsement No. 47); R. 13-3 at 2, ¶ 3 (Charles Jones' Affidavit).

In all other material respects, though, Policy Nos. EKI3042564 and EKI3069673's provisions are identical.  Generally speaking, each obligates Scottsdale to defend and indemnify C.A. Jones Management Group, other associated entities, and their directors, officers, and employees for claims made against them.  The pertinent insuring clauses read:

> 1.      The **Insurer** shall pay the **Loss** of the **Directors and Officers** for which the **Directors and Officers** are not indemnified by the **Company** and which the **Directors and Officers** have become legally obligated to pay by reason of a **Claim** first made against the **Directors and Officers** during the **Policy Period** . . . and reported to the **Insurer** pursuant to Section E.1. herein, for any **Wrongful Act** taking place prior to the end of the **Policy Period**.
>
> . . . . .
>
> 3.      The **Insurer** shall pay the **Loss** of the **Company** which the **Company** becomes legally obligated to pay by reason of a **Claim** first made against the **Company** during the **Policy Period** . . . and reported to the **Insurer** pursuant to Section E.1. herein, for any **Wrongful Act** taking place prior to the end of the **Policy Period**.

R. 17-1 at 22, § A.1, .3 (Policy No. EKI3042564: Directors and Officers and Company Coverage Section); R. 17-2 at 22, § A.1, .3 (Policy No. EKI3069673: Directors and Officers and Company Coverage Section).

As a condition precedent to any right to payment under the insuring clauses, the "**Insureds**" must "give **Insurer** written notice of any **Claim** as soon as practicable, but in no event later than sixty (60) days after the end of the **Policy Period**." R. 17-1 at 28, §

E.1; R. 17-2 at 28, § E.1.  A "**Claim**" means, among other things, "a civil proceeding against any **Insured** seeking monetary damages or non-monetary or injunctive relief, commenced by the service of a complaint or similar pleading."  R. 17-1 at 22, § B.1.c; R. 17-2 at 22, § B.1.c.  Such a "**Claim**" is "deemed to have been first made against the **Insured** on the date an **Insured** who is an executive officer, director or general counsel becomes aware" of it.  R. 17-1 at 60 (Policy No. EKI3042564: Endorsement No. 15); R. 17-2 at 61 (Policy No. EKI3069673: Endorsement No. 16).  Multiple "**Claims** arising out of the same **Wrongful Act** and all **Interrelated Wrongful Acts**" are "deemed to constitute a single **Claim** . . . made at . . . the time at which the earliest **Claim** involving the same **Wrongful Act** or **Interrelated Wrongful Act** is first made."  R. 17-1 at 27, § D.3.a; R. 17-2 at 27, § D.3.a.  An "**Interrelated Wrongful Act**" means "all **Wrongful Acts** that have as a common nexus any fact, circumstance, situation, event, transaction, cause or series of facts, circumstances, situations, events, transactions or causes."  R. 17-1 at 23, § B.6; R. 17-2 at 23, § B.6.

Between 2012 and 2013, C.A. Jones Management sought coverage under Policy No. EKI3069673 for defense costs associated with three legal actions: *Griffin v. Jones*, No. 5:12-CV-00033-TBR (W.D. Ky. Feb. 28, 2012) (*Griffin I*); *Griffin v. Jones*, No. 5:12-CV-00163-TBR-LLK (W.D. Ky. Nov. 2, 2012) (*Griffin II*); and *Waldschmidt v. C.A. Jones Mgmt. Grp., LLC* (*In re Coll. Book Rental Co.*), Nos. 3:12-BK-09130, 3:13-AP-90101 (Bankr. M.D. Tenn. Mar. 4, 2013).  C.A. Jones Management Group provided Scottsdale with notice of *Griffin I* on September 25, 2012; of *Griffin II* on November 9, 2012; and of *Waldschmidt* on June 19, 2013.  *See* R. 17-5 at 3–4, ¶¶ 4–6, 9, 11

(Zartman's Affidavit).[1]  Claiming it had no contractual duty to defend or indemnify C.A. Jones Management Group, however, Scottsdale denied the requests for coverage.  *See* R. 13-3 at 2, ¶ 7.

## B.

In response, C.A. Jones Management Group, LLC filed this action, alleging breach of contract, bad-faith settlement practices, and unjust enrichment.  *See* R. 1 at 4–5, ¶¶ 14–25 (Complaint).  Scottsdale Indemnity Company counterclaimed for declaratory judgment.  *See* R. 6 at 18–21, ¶¶ 32–33 (Answer and Counterclaim).

On December 27, 2013, C.A. Jones Management Group sought to enjoin Scottsdale to defend and indemnify it from any resultant losses.  *See* R. 13 at 1 (Motion for Preliminary Injunction).   Finding C.A. Jones Management Group could not demonstrate a likelihood of success on the merits, or irreparable harm, however, the Court denied that request.  *See C.A. Jones Mgmt. Grp., LLC v. Scottsdale Indem. Co.* (*C.A. Jones I*), No. 5:13-CV-00173-TBR-LLK, 2014 WL 811654, at *13–14 (W.D. Ky. Feb. 28, 2014), *amended in part on reconsideration by* No. 5:13-CV-000173-TBR-LLK, 2015 WL 1393261 (W.D. Ky. Mar. 25, 2015).   The Court held, in relevant part, that various exclusions and limitations barred coverage for C.A. Jones Management Group's claim.  *Id.* at *7–13.[2]

---

[1] C.A. Jones Management Group, LLC provided Scottsdale Indemnity Company with notice of these actions through e-mail communications from Betty Thompson to Scottsdale.  *See* R. 20-1 at 56 (Notice of *Griffin I*); R. 20-4 at 24–25 (Notice of *Griffin II*); R. 21-1 at 115 (Notice of *Waldschmidt*).

[2] Subsequently, Scottsdale moved to bifurcate C.A. Jones Management Group's breach-of-contract and bad-faith settlement practices claims, and to stay discovery as related to the latter claim.  *See* R. 31 at 1 (Motion to Bifurcate and Stay Discovery).  On March 18, 2015, the Court granted that motion in full.  *See C.A. Jones Mgmt. Grp., LLC v. Scottsdale Indem. Co.* (*C.A. Jones II*), No. 5:13-CV-00173-TBR-LLK, 2015 WL 1262219, at *3 (W.D. Ky. Mar. 18, 2015).

Scottsdale asked the Court to reconsider a portion of that opinion on March 11, 2014. *See* R. 30 at 1 (Motion to Reconsider). The Court erred as a matter of law, Scottsdale said, in finding C.A. Jones Management Group's claim to be covered under the insuring clauses at all. *See id.* at 4. Looking to Policy No. EKI3069673's clear and unambiguous language, the Court agreed and amended its earlier opinion accordingly. *See C.A. Jones Mgmt. Grp., LLC v. Scottsdale Indem. Co.* (*C.A. Jones III*), No. 5:13-CV-00173-TBR-LLK, 2015 WL 1393261, at *6 (W.D. Ky. Mar. 25, 2015).[3] Now, Scottsdale moves for summary judgment on C.A. Jones Management Group's three-count complaint and on its declaratory judgment counterclaim. *See* R. 53 at 1 (Motion for Summary Judgment).

## II.

Summary judgment is appropriate when the record, viewed in the light most favorable to the nonmoving party, reveals "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute of material fact exists where "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). The Court "may not make credibility determinations nor weigh the evidence when determining whether an issue of fact remains for trial." *Laster v. City of Kalamazoo*, 746 F.3d 714, 726 (6th Cir. 2014) (citing

---

[3] Following resolution of Scottsdale's motion to reconsider, C.A. Jones Management Group asked the Court to certify to the Kentucky Supreme Court the following question:

> Does Kentucky law permit an insurer to deny coverage under a claims[-]made policy for lack of timely notice without a showing of prejudice to the insurer?

R. 48 at 1 (Motion to Certify Question to Kentucky Supreme Court). The Court denied that request on July 7, 2015. *See C.A. Jones Mgmt. Grp., LLC v. Scottsdale Indem. Co.* (*C.A. Jones IV*), No. 5:13-CV-00173-TBR-LLK, slip op. at 7 (W.D. Ky. July 7, 2015).

*Logan v. Denny's, Inc.*, 259 F.3d 558, 566 (6th Cir. 2001); *Ahlers v. Schebil*, 188 F.3d 365, 369 (6th Cir. 1999)).  "The ultimate question is 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'"  *Back v. Nestlé USA, Inc.*, 694 F.3d 571, 575 (6th Cir. 2012) (quoting *Anderson*, 477 U.S. at 251–52).

As the party moving for summary judgment, Scottsdale must shoulder the burden of showing the absence of a genuine dispute of material fact as to at least one essential element of C.A. Jones Management Group's claim.  Fed. R. Civ. P. 56(c); *see Laster*, 746 F.3d at 726 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986)).  Assuming Scottsdale satisfies its burden of production, C.A. Jones Management Group "must—by deposition, answers to interrogatories, affidavits, and admissions on file—show specific facts that reveal a genuine issue for trial."  *Laster*, 746 F.3d at 726 (citing *Celotex Corp.*, 477 U.S. at 324).

## III.

Scottsdale seeks summary judgment on C.A. Jones Management Group's breach of contract, bad-faith settlement practices, and unjust enrichment claims.  According to Scottsdale, the breach-of-contract claim falters because C.A. Jones Management Group failed to provide timely notice as required under either Policy Nos. EKI3042564 and EKI3069673.  *See* R. 53-1 at 7–8 (Memorandum in Support).  In the absence of such coverage, Scottsdale submits, no claim will lie against it for bad-faith settlement practices.  *See id.* at 8–9.  Lastly, because a valid and enforceable insurance contract existed between Scottsdale and C.A. Jones Management Group, Scottsdale argues that

unjust enrichment is unavailable as a theory of recovery too. *See id.* at 9. For the reasons that follow, the Court agrees on all scores.

## A.

Scottsdale maintains that the plain and unambiguous language of Policy No. EKI3042564 and Policy No. EKI3069673 demonstrates the lack of coverage for C.A. Jones Management Group's claim. *See id.* at 8–9. Accordingly, Scottsdale asks for judgment as a matter of law as to C.A. Jones Management Group's breach-of-contract claim. *See id.* The Court agrees.

## 1.

To support a breach-of-contract claim under Kentucky law, C.A. Jones Management Group must establish (1) the existence of a contract, (2) breach of that contract, and (3) loss or damage following from the breach. *See Fannin v. Commercial Credit Corp.*, 249 S.W.2d 826, 827 (Ky. 1952); *Metro Louisville/Jefferson Cty. Gov't v. Abma*, 326 S.W.3d 1, 8 (Ky. Ct. App. 2009). In the absence of factual disputes, "the construction and legal effect of an insurance contract is a matter of law" for the Court. *Bituminous Cas. Corp. v. Kenway Contracting, Inc.*, 240 S.W.3d 633, 638 (Ky. 2007) (citing *Morganfield Nat'l Bank v. Damien Elder & Sons*, 836 S.W.2d 893, 895 (Ky. 1992)), *as modified* (Ky. Dec. 21, 2007), *and as modified on denial of reh'g* (Ky. Jan. 24, 2008); *accord Hanover Ins. Co. v. Am. Eng'g Co.*, 33 F.3d 727, 730 (6th Cir. 1997). Where clear and unambiguous, the plain and ordinary meaning of terms in an insurance policy controls. *See Kemper Nat'l Ins. Co. v. Heaven Hill Distilleries, Inc.*, 82 S.W.3d 869, 873 (Ky. 2002); *Nationwide Mut. Ins. Co. v. Nolan*, 10 S.W.3d 129, 131 (Ky. 1999). If not, however, generally such ambiguities will be resolved in favor of the insured. *See*

*Tower Ins. Co. of N.Y. v. Horn*, 472 S.W.3d 172, 174 (Ky. 2015).  The insured has the burden of demonstrating coverage under an insurance contract.  *See Dowell v. Safe Auto Ins. Co.*, 208 S.W.3d 872, 878 (Ky. 2006).

## 2.

In this case, neither Policy No. EKI3042564 nor Policy No. EKI3069673 afford C.A. Jones Management Group coverage for *Griffin I*, *Griffin II*, or *Waldschmidt*.  *Griffin I*, *Griffin II*, and *Waldschmidt* are Claims as that term is used in the Policies.  *See* R. 17-1 at 22, § B.1.c; R. 17-2 at 22, § B.1.c.  Because those Claims share as a common nexus a "series of facts, circumstances, situations, events, transactions or causes," the Policies treat them as Interrelated Wrongful Acts, R. 17-1 at 23, § B.6; R. 17-2 at 23, § B.6, deemed to constitute a single Claim (as opposed to separate Claims), *see* R. 17-1 at 27, § D.3.a; R. 17-2 at 27, § D.3.a.  To determine when that single Claim is made, the Policies ask when the earliest of the Claims involving the Interrelated Wrongful Acts was first made.  *See* R. 17-1 at 27, § D.3.a; R. 17-2 at 27, § D.3.a.

Here, the earliest Claim involving *Griffin I*, *Griffin II*, and *Waldschmidt* was made no later than February 29, 2012.  A Claim is "deemed to have been first made on the date an **Insured** who is an executive officer, director or general counsel becomes aware" of it.  R. 17-1 at 60; R. 17-2 at 61.  As the "sole owner and member of C.A. Jones Management Group, LLC," R. 13-3 at 1, ¶ 1, Charles A. Jones is an Insured who is an executive officer or director, *see* R. 17-1 at 60; R. 17-2 at 61.[4]  He became aware of *Griffin I* no later than

---

[4] The term "**Insured**" means "the **Company** and the **Directors and Officers**."  R. 17-1 at 23, § B.5 (Policy No. EKI3042564: Directors and Officers and Company Coverage Section); R. 17-2 at 23, § B.5 (Policy No. EKI3069673: Directors and Officers and Company Coverage Section).  "**Directors and Officers**" includes "any person who was, now is, or shall become . . . a duly elected or appointed director, officer, or similar executive of the **Company**, or any member of the management board of the **Company**."  R. 17-1 at 23, § B.4.a; R. 17-2 at 23, § B.4.a.  The term "**Company**" includes "the **Parent Company**," R. 17-1 at 9, § B.2.a (Policy No. EKI3042564: General Terms and Conditions); R. 17-2 at 9, § B.2.a (Policy

February 29, 2012, the date on which he received the summons in that action.   The earliest Claim involving *Griffin I*, *Griffin II*, or *Waldschmidt* was first made, then, on February 29 if not earlier.  *See* R. 17-1 at 60; R. 17-2 at 61.

Policy No. EKI3069673 does not cover that Claim.   The insuring clauses only require Scottsdale to pay a Claim "first made . . . during the **Policy Period** . . . and reported to the **Insurer** pursuant to Section E.1."  R. 17-2 at 22, § A.1, .3.   The Policy Period for Policy No. EKI3069673 ran from July 1, 2012 to November 27, 2012.  *See id.* at 10, § B.9; *id.* at 100.   The Claim was first made, however, on February 29, 2012. Consequently, there is no coverage under Policy No. EKI3069673.

Nor does Policy No. EKI3042564 cover the Claim.  The Policy Period for Policy No. EKI3042564 ran from July 1, 2011 to July 1, 2012, *see* R. 17-1 at 10, § B.9; *id.* at 5, and so the Claim was "first made . . . during the **Policy Period**," *id.* at 22, § A.1, .3. However, that Claim was not "reported to the **Insurer** pursuant to Section E.1."  *Id.* Under that Section, as a condition precedent to any right to payment under the insuring clauses, the "**Insureds**" must "give **Insurer** written notice of any **Claim** as soon as practicable, but in no event later than sixty (60) days after the end of the **Policy Period**." *Id.* at 28, § E.1.  Here, C.A. Jones Management Group sent Scottsdale written notice of the Claim related to *Griffin I* on September 25, 2012, *see* R. 17-5 at 3, ¶¶ 4–6; R. 20-1 at 56 (Notice of *Griffin I*), which is more than sixty days after the end of the Policy Period. Therefore, Policy No. EKI3042564 does not cover the Claim either.

---

No. EKI3069673: General Terms and Conditions), which, in turn, means any "entity first named in Item 1 of the Declarations," R. 17-1 at 9, § B.7; R. 17-2 at 9, § B.7.  C.A. Jones Management Group, LLC, is among those entities named in Item 1.  *See* R. 17-1 at 47 (Policy No. EKI3042564: Endorsement No. 2); R. 17-2 at 47 (Policy No. EKI3069673: Endorsement No. 2).

**3.**

C.A. Jones Management Group does not appear to disagree that, under the plain and unambiguous language of the Policies, its Claim was not timely reported. *See* R. 57 at 5–8 (Response to Motion for Summary Judgment). Instead, C.A. Jones Management Group takes the position that the Kentucky Supreme Court would adopt the "notice-prejudice rule," under which an insurer must show prejudice before rejecting a claim due to late notice, for claims-made-and-reported policies. *See id.* at 6–8. It urges the Court to follow the Kentucky Court of Appeals' holding in *AIG Domestic Claims, Inc. v. Tussey*, No. 2008-CA-001248-MR, 2010 WL 3603844 (Ky. Ct. App. Sept. 17, 2010), *discretionary review granted sub nom. Nat'l Union Fire Ins. Co. v. Pike Cty. Bd. of Educ.*, No. 2010-SC-000827 (Ky. Sept. 14, 2011), *and appeal dismissed per stipulation* (Ky. Feb. 21, 2013), as that decision "remains the best indication" of how Kentucky would resolve the issue, R. 57 at 8. The Court rejected that argument once before, *see C.A. Jones III*, 2015 WL 1393261, at *3–6, and does so again now with a few more added words.

**a.**

Because the Court's jurisdiction over this case rests on the diversity of the parties, *see* 28 U.S.C. § 1332, this Court applies Kentucky law as enunciated by the Kentucky Supreme Court, *see Tooling, Mfg. & Techs. Ass'n v. Hartford Fire Ins. Co.*, 693 F.3d 665, 670 (6th Cir. 2012). Absent a controlling decision on the relevant issue, the Court must try to predict how the Kentucky Supreme Court would resolve the question. *See Heil Co. v. Evanston Ins. Co.*, 690 F.3d 722, 731 (6th Cir. 2012). In doing so, the Court looks to "the decisions (or dicta) of the Kentucky Supreme Court in analogous cases,

pronouncements from other Kentucky courts, restatements of law, commentaries, and decisions from other jurisdictions." *State Auto Prop. & Cas. Ins. Co. v. Hargis*, 785 F.3d 189, 195 (6th Cir. 2015) (citing *Combs v. Int'l Ins. Co.*, 354 F.3d 568, 577 (6th Cir. 2004); *Garden City Osteopathic Hosp. v. HBE Corp.*, 55 F.3d 1126, 1130 (6th Cir. 1995); *Bailey v. V & O Press Co.*, 770 F.2d 601, 604 (6th Cir. 1985)).  The Court should follow the opinions—published or not—of the Kentucky Court of Appeals unless persuaded that the Kentucky Supreme Court would decide otherwise.  *See Ziegler v. IBP Hog Mkt., Inc.*, 249 F.3d 509, 517 (6th Cir. 2001).

### b.

Here, the Court predicts that Kentucky Supreme Court would not extend the notice-prejudice rule to claims-made-and-reported policies that clearly and unambiguously requires timely notice as a condition precedent to coverage.

*First*, general principles of contract law reinforce the Court's prediction that the Kentucky Supreme Court would not apply the notice-prejudice rule to date-certain notice provisions in claims-made-and-reported insurance policies.  The longstanding view in Kentucky holds that where the language of an insurance policy is unambiguous, it should be construed to mean what it says.  *See, e.g.*, *Horn*, 472 S.W.3d at 174; *Heaven Hill Distilleries*, 82 S.W.3d at 873; *Nolan*, 10 S.W.3d at 131; *Cheek v. Commonwealth Life Ins. Co.*, 126 S.W.2d 1084, 1089 (Ky. 1939).  Kentucky courts "cannot make a different insurance contract for the parties by enlarging the risks contrary to the natural and obvious meaning of the existing contract."  *Weaver v. Nat'l Fid. Ins. Co.*, 377 S.W.2d 73, 75 (Ky. 1963); *see also St. Paul Fire & Marine Ins. Co. v. Powell-Walton-Milward, Inc.*,

11

870 S.W.2d 223, 226–27 (Ky. 1994); *accord U.S. Fire Ins. Co. v. Ky. Truck Sales, Inc.*, 786 F.2d 736, 739 (6th Cir. 1986).

The Court would alter the very nature of the contract between the insurer and the insured, however, if it were to adopt the notice-prejudice rule for claims-made-and-reported policies. The different role that notice plays in claims-made-and-reported policies as compared to occurrence-based policies illustrates that point. A claims-made-and-reported policy provides coverage only for claims *made* against the insured and *reported to* the insurer during the life of the policy regardless of when the underlying incident occurred. Timely notice of a claim is the event that not only *triggers* coverage, but also *defines* its scope. An occurrence-based policy, by contrast, provides coverage for incidents which *occur* during the life of the policy without regard to when a claim is brought. While prompt notice allows the insurer to investigate and defend the claim, it has no effect as to the scope of coverage. The distinction is important:

> With claims-made policies, the very act of giving an extension of reporting time after the expiration of the policy period . . . negates the inherent difference between the two contract types. Coverage depends on the claim being made and reported to the insurer during the policy period. Claims-made or discovery policies are essentially *reporting* policies. If the claim is reported to the insurer during the policy period, then the carrier is legally obligated to pay; if the claim is not reported during the policy period, no liability attaches. If a court were to allow an extension of reporting time after the end of the policy period, such is tantamount to an *extension of coverage* to the insured gratis, something for which the insurer has not bargained. This extension of coverage, by the court, so very different from a mere condition of the policy, in effect rewrites the contract between the two parties.

*Gulf Ins. Co. v. Dolan, Fertig & Curtis*, 433 So. 2d 512, 515–16 (Fla. 1983). To excuse late notice, then, effectively rewrites the contract between the insurer and insured—something Kentucky courts will not do. *See Ky. Ass'n of Ctys. All Lines Fund Tr. v. McClendon*, 157 S.W.3d 626, 633 (Ky. 2005) ("As it has been stated numerous times by

12

the courts in this Commonwealth, courts cannot enlarge coverage or make new contracts under the guise of construction, but must determine the parties' responsibilities according to the contract terms.").

*Second*, such a rule would diminish the availability and advantages of claims-made-and-reported policies not only for insurers, but also for insureds.  The principal advantage of claims-made-and-reported policies comes from the fact that an insurer can predict its exposure at a time certain.  Because the risk to the insurer passes when the policy period expires, the insurer is able to offer claims-made-and-reported policies at a premium much lower than that charged for conventional, occurrence-based policies.  *See Nat'l Union Fire Ins. Co. of Pittsburgh v. Baker & McKenzie*, 997 F.2d 305, 306 (7th Cir. 1993) (Posner, J.).  If an insurer lacked that assurance, however, it could "no longer 'close the books' on previous policy periods, and policy premiums presumably would rise to account for the risk that an insured might notify the insurer of a claim after the policy period has expired."  *Craft v. Phila. Indem. Ins. Co.*, 343 P.3d 951, 959 (Colo. 2015).  Were Kentucky to apply the notice-prejudice rule to claims-made-and-reported policies, the availability of such insurance to citizens of the Commonwealth would likely decrease.  *See id.* at 957–58 (discussing evolution of claims-made-and-reported policies).

*Third*, the majority of other jurisdictions have rejected application of the notice-prejudice rule to claims-made-and-reported policies.  *See, e.g., id.* at 961; *Fireman's Fund Ins. Co. v. Care Mgmt., Inc.*, 361 S.W.3d 800, 805 (Ark. 2010); *Bianco Prof'l Ass'n v. Home Ins. Co.*, 740 A.2d 1051, 1057–58 (N.H. 1999) (per curiam); *Paint Shuttle, Inc. v. Cont'l Cas. Co.*, 733 N.E.2d 513, 521–24 (Ind. Ct. App. 2000); *Dolan, Fertig & Curtis*, 433 So. 2d at 514; *Gargano v. Liberty Int'l Underwriters, Inc.*, 572 F.3d 45, 51

13

(1st Cir. 2009) (applying Massachusetts law); *MGIC Indem. Corp. v. Cent. Bank of Monroe, La.*, 838 F.2d 1382, 1385–86 (5th Cir. 1988) (applying Louisiana law); *Nat'l R.R. Passenger Corp. v. Lexington Ins. Co.*, 445 F. Supp. 2d 37, 43–45 (D.D.C. 2006) (applying District of Columbia law), *aff'd per curiam*, 249 F. App'x 832 (D.C. Cir. 2007).   The same trend continues among federal courts when asked to predict their forum's highest court would resolve the issue.   *DiLuglio v. New England Ins. Co.*, 959 F.2d 355, 359 (1st Cir. 1992) (predicting Rhode Island law); *Alaska Interstate Constr., LLC v. Crum & Forster Specialty Ins. Co.*, No. 3:14-CV-00126-RRB, 2015 WL 7253673, at *5 (D. Alaska Nov. 17, 2015) (predicting Alaska law), *appeal docketed*, No. 15-35973 (9th Cir. Dec. 17, 2015); *GS2 Eng'g & Envtl. Consultants, Inc.*, 956 F. Supp. 2d 686, 691–95 (D.S.C. 2013) (predicting South Carolina law); *Manufactured Housing Cmtys. of Wash. v. St. Paul Mercury Ins. Co.*, 660 F. Supp. 2d 1208, 1213–15 (W.D. Wash. 2009) (predicting Washington law).   The United States District Courts for the Western and Eastern Districts of Kentucky, as well as the Sixth Circuit Court of Appeals, predict that Kentucky will join the majority of its sister states.   *See Ashland Hosp. Corp. v. RLI Ins. Co.*, 632 F. App'x 271, 272 (6th Cir. 2016) (per curiam) (citing *Ashland Hosp. Corp. v. RLI Ins. Co.*, No. 13-143-DLB-EBA, 2015 WL 1223675, at *12 (E.D. Ky. Mar. 17, 2015)); *Trek Bicycle Corp. v. Mitsui Sumitomo Ins. Co.*, No. 5:05-CV-44-R, 2006 WL 1642298, at *3 (W.D. Ky. June 7, 2006).

In short, the Court predicts that the Kentucky Supreme Court would not extend the notice-prejudice rule to claims-made-and-reported policies that clearly and unambiguously requires timely notice as a condition precedent to coverage.   Scottsdale is

entitled to summary judgment on C.A. Jones Management Group's breach-of-contract claim.

## B.

Next, because Scottsdale had no contractual obligation to pay C.A. Jones Management Group's claim, it says that no bad-faith settlement practices claim will lie against it—statutory or otherwise. On that point, Scottsdale is correct.

Kentucky applies a "single test" for measuring "the merits of bad-faith claims, whether brought . . . under common law or statute." *Rawe v. Liberty Mut. Fire Ins. Co.*, 462 F.3d 521, 527 (6th Cir. 2006); *accord Wittmer v. Jones*, 864 S.W.2d 885, 890 (Ky. 1993). The test requires the insured to establish: (1) that the insurance policy obligates the insurer to pay the insured's claim; (2) that the insurer's denial lacks a reasonable basis in law or fact; and (3) that the insurer knowingly or recklessly acted without a reasonable basis for denying the claim. *See Rawe*, 462 F.3d at 527; *accord Wittmer*, 864 S.W.2d at 890.

Here, Scottsdale had no contractual obligation to pay C.A. Jones Management Group's claim. "Absent a contractual obligation, there simply is no bad faith cause of action, either at common law or by statute." *Davidson v. Am. Freightways, Inc.*, 25 S.W.3d 94, 100 (Ky. 2000); *see also Ky. Nat. Ins. Co. v. Shaffer*, 155 S.W.3d 738, 742 (Ky. Ct. App. 2004) ("[W]e believe it is sound principle that, in the absence of a contractual obligation in an insurance policy for coverage, there can be no claim for bad faith."), *as modified* (Ky. Ct. App. Feb. 4, 2005); *accord Daugherty v. Am. Exp. Co.*, 485 F. App'x 746, 748 (6th Cir. 2012) (same). Accordingly, Scottsdale is entitled to

summary judgment on C.A. Jones Management Group's bad-faith settlement practices claim too.

## C.

Last but not least, Scottsdale maintains that C.A. Jones Management Group's unjust enrichment claim fares no better than its breach-of-contract or bad-faith settlement claims. Again, Scottsdale is right.

An unjust enrichment claim has three elements: (1) a benefit conferred upon the defendant at the plaintiff's expense; (2) a resulting appreciation of the benefit by the defendant; and (3) the inequitable retention of the benefit without payment for its value. *Christian Cty. Clerk ex rel. Kem v. Mortg. Elec. Registration Sys., Inc.*, 515 F. App'x 451, 459 (6th Cir. 2013); *Guarantee Elec. Co. v. Big Rivers Elec. Corp.*, 669 F. Supp. 1371, 1380–81 (W.D. Ky. 1987); *accord Collins v. Ky. Lottery Corp.*, 399 S.W.3d 449, 455 (Ky. Ct. App. 2012); *Guerin v. Fulkerson*, 354 S.W.3d 161, 165 (Ky. Ct. App. 2011). "The doctrine of unjust enrichment has no application," however, "in a situation where there is an explicit contract which has been performed." *Codell Constr. Co. v. Commonwealth*, 566 S.W.2d 161, 165 (Ky. Ct. App. 1977) (citing *Ashton Co., Inc., Contractors & Eng'rs v. State*, 454 P.2d 1004 (Ariz. Ct. App. 1969)); *see also Sparks Milling Co. v. Powell*, 143 S.W.2d 75, 76 (Ky. 1940).

The above-quoted language controls the outcome of this claim. Because a valid and enforceable insurance contract existed between Scottsdale and C.A. Jones Management Group, unjust enrichment is unavailable as a theory of recovery. *See Miller v. Reminger Co.*, No. 3:11-CV-315-CRS, 2012 WL 2050239, at *11 (W.D. Ky. June 6, 2012). In any event, the fact that C.A. Jones Management Group's claim was not

16

covered does not suggest that Scottsdale inequitably retained the premiums paid to it. *Westfield Ins. Co. v. B.H. Green & Son, Inc.*, No. 5:11-CV-00010-R, 2013 WL 5278243, at *7 n.5 (W.D. Ky. Sept. 18, 2013).   On C.A. Jones Management Group's unjust enrichment count, then, summary judgment for Scottsdale is warranted.

## IV.

Scottsdale Indemnity Company's Motion for Summary Judgment, R. 53, is **GRANTED**.   An appropriate order and judgment will issue separate from this Memorandum Opinion.

Date:

cc:      Counsel of Record